VAN WEZEL, by her next friend vs. VAN WEZEL.

A party who is at once taken into custody under a precept issuing out of this court for a contempt in not paying money pursuant to an order, is entitled to apply for his discharge under the law relating to voluntary assignments by a debtor imprisoned in execution in civil causes, (2 R. S. 31.)

A precept to commit to prison under the statute relating to proceedings for contempts, (2 R. S. 534, sec. 4,) is an execution.

Whether a party would be entitled to apply under the act relating to voluntary assignments, &c. where he had been committed for an ordinary contempt *after having been brought up on an attachment: Qu.*

A person who has been illegally arrested while returning from court where he has been examined will still be liable to arrest under the writ after a discharge from the unlawful taking. The process is still good in the sheriff's hands.

The bill in this case was filed for a divorce *a mensa et thoro.* Upon an application for temporary alimony, a reference to a master had taken place; and upon the coming in of his report, an order for such alimony was made. The defendant had made default in paying it, and was consequently attached and imprisoned.

*October 10, 1831.*

*Attachment for alimony. Insolvent laws*

He now presented his petition to the Vice-Chancellor, under the provisions of the statute relating to "voluntary assign- "ments by a debtor imprisoned in execution in civil causes." (2 R. S. 31.)

Mr. *W. Mulock,* for the petitioner.

Mr. *H. S. Mackay,* for the complainant and against the application.

This case does not come within the policy or intention of the statute. The general policy of the bankrupt and insolvent laws was to relieve the mercantile man. When the statute

15

1831.

VAN WEZEL
*v.*
VAN WEZEL.

speaks of imprisonment on executions, "in civil suits," § 1, it means executions in actions at law as contradistinguished from criminal suits. The words are not applicable to courts of equity. Equity cannot take a power like this by implication. The defendant is imprisoned for not complying with an order directing the maintenance of his family. He cannot be said to be insolvent for this purpose. It is a duty which must be performed at all events. The master's report judicially ascertains that the defendant is of sufficient ability to maintain his family. If this party be discharged, every defendant who is imprisoned for not complying with the decrees of the court will claim it as a right.

Mr. *W. Mulock,* contra.

The " Lords' act" in England and the decisions under it show, that the process of attachment for contempt is regarded in the same light as an execution upon a judgment. The cases of *The King* v. *Davis,* 1 *Bos. & Pul.* 336, and *The King* v. *Pickerill,* 4 *T. R.* 809, are in point.

*October* 12.

THE VICE-CHANCELLOR. The defendant has been committed by several precepts, issued from this court, for contempts of an order which directed moneys to be paid to the complainant by way of temporary alimony. He now presents a petition, under the Revised Statutes, vol. 2, p. 31, to be discharged from imprisonment on making an assignment of his property. It is opposed, upon the ground of its not being a case within the statute ; and, therefore, the court has no right to discharge him.

The words of the statute (§ 1,) are : " Every person, except " plaintiffs and lessors of a plaintiff, and defendants, imprisoned " for costs only, who shall be imprisoned by virtue of one or " more executions in civil causes upon which there shall be " due a sum not exceeding five hundred dollars, may at any " time petition the court from which such process issued, or " the court of common pleas of the county in which he is im- " prisoned, for his discharge from such imprisonment," &c. A

1831.

VAN WEZEL
v.
VAN WEZEL.

similar proceeding was authorized by the Revised Laws of 1813, although it was a little differently worded: "If any " person shall be charged in execution, &c. and shall be minded " to deliver up to the creditor who shall so charge him all his " estate, &c. he may present a petition to the court from " whence the process issued," &c. In the first insolvent act passed by our Legislature, which occurred in 1789, (2 Jones and Varick's edit. 408,) the same phraseology was used.

The insolvent law of our State is undoubtedly borrowed from the "Lords' act," as it is called in England; and which was passed in 32 Geo. II. ch. 28. It is entitled, as ours originally was: "An act for the relief of debtors with respect to " the imprisonment of their persons," &c.; and a reference to its 13th section shows our act to have been copied almost word for word from it. By the former, it is enacted, that " if " any person or persons shall be charged in execution for any " sum not exceeding one hundred pounds, &c."—"and shall be " minded to deliver up," &c. The *Lords' act* underwent various amendments from time to time during the reign of George III.; and it constituted the system of insolvent law in England down to the year 1813.

In the courts of law in that country the question frequently arose, whether a person in prison on an attachment for non-payment of money was within the provisions of the insolvent acts. In *Rex* v. *Stokes, Cowp.* 136, the court considered an attachment to be an execution in a civil suit, so far as it was intended to enforce an obligation or the performance of a duty as between party and party—as a matter solely between them, unconnected with the offence itself: (see also *Bonafous* v. *Schoole*, 4 *T. R.* 316;) and the court decided that the defendant who was in custody on an attachment for non-payment of costs was within the provisions of the insolvent laws and entitled to his discharge. A similar decision was made in *The King* v. *Pickerill*, 4 *T. R.* 809. In *The King* v. *Davis*, 1 *Bos. & Pul.* 336, where the defendant, who had been imprisoned on an attachment for not paying a sum of money to a plaintiff in a cause and was brought up to be discharged under the *Lords' act*, the court held he was dischargeable, and said, an attach-

ment for the non-payment of money was an execution. In the case of *The King* v. *Hubbard*, 10 *East*, 408, where the defendant was in custody upon an attachment for non-payment of a small sum due by an award and was brought up to be discharged under one of the statutes amendatory of the *Lords' act*, (which was passed to relieve prisoners in execution upon judgments for small sums,) the court determined he was not entitled to be discharged by that statute, because, although he was in execution by the attachment, yet he was not imprisoned by virtue of any judgment.

It is, however, very remarkable that, notwithstanding the decisions of the courts of law, there is no case to be found where the court of chancery in England ever extended the benefit of the *Lords' act* to persons imprisoned for contempts upon process issued out of that court. In order to give persons so imprisoned such benefit, it was deemed necessary to pass a statute expressly for the purpose. In 1809 parliament passed an act, (43 Geo. III. ch. 6,) extending to prisoners, in custody for contempt of court by not paying money or costs ordered to be paid by decrees or orders of courts of equity, the benefit of the several previous acts for the relief of debtors with respect to the imprisonment of their persons. Thus showing, from the very necessity of passing such a law, that the former laws did not, in terms or by a fair construction, apply to persons so imprisoned under process from the court of chancery. Afterwards, in the year 1813, when the British parliament adopted a new system of insolvent law, (1 Geo. IV. ch. 119,) and established a court called "The court for the relief of insolvent debtors," care was taken to extend its benefits by express enactment to persons imprisoned for contempt for non-payment of money as well as to persons imprisoned for debt, damages and costs. Hence it would seem to follow, the court of chancery, in the absence of express legislative authority, would not extend the benefit of the insolvent laws to prisoners committed for contempts in a court of equity. And yet it is difficult to perceive why the same construction should not have been adopted there as was made use of and acted upon so repeatedly in the courts of law.

1831.

VAN WEZEL
v.
VAN WEZEL.

Upon the principle contained in the decisions which I have referred to, in connection with the before mentioned statutes, and from the view which was taken of the process of attachment for contempt in the chancery of Ireland, *In the matter of M'Williams*, 1 *Sch. & Lef.* 174, I should feel myself at liberty to adopt the same construction here, if I were now considering our own statute as it stood anterior to the late revision. But when the words of the present statute, taken in connection with the provisions of the law in relation to proceedings for contempts (2 R. S. 534) are considered, I think they clearly authorize a conclusion that prisoners in the situation of this, defendant are entitled to apply under the statute which gives relief from imprisonment.

The words " imprisoned by virtue of one or more executions " in civil causes," which appear in the present statute, give rise to the question whether a precept to commit to prison, under the 4th section of the statute regulating proceeding for contempts (*Ib.* 535) is or is not an execution? The section runs thus :—" When any rule or order of a court shall have " been made for the payment of costs or any other sum of " money, and proof, by affidavit, shall be made of the personal " demand of such sum of money, and of a refusal to pay it, " the court may issue a precept to commit the person so diso- " beying to prison, until such sum, and the costs and expenses " of the proceeding, be paid." The disobedience here provided for is an exception from all other cases under this statute ; for in all the other cases which are enumerated, an attachment issues to bring the party into court to answer before he is committed. But where an order is made for the payment of costs or any sum of money and the party disobeys it, no attachment issues in the first instance : a precept at once goes, founded upon the fact of refusal to pay. It is to all intents and purposes an execution. The order is a judgment rendered in favor of one party against the other for the payment of a sum certain or which may be reduced to a certainty, if it be for costs, by taxation. The object of the precept is to give effect to the order, to enforce its performance, and have it completely executed. When the party is imprisoned upon it, he

is within the letter and meaning of the law relating to imprisonment " by virtue of one or more executions." Of this, there exists in my mind no doubt. I think it equally clear, that the same is an imprisonment in a " civil" cause : for it is a case between party and party, where the one is pursuing a civil remedy against the other. It does not partake of the nature or character of a public prosecution.

The defendant in this case is entitled to present his petition for a discharge.

I wish it to be understood, however, that the present opinion is to be confined to cases connected with the 4th section of the statute regulating proceedings for contempts. It is not to be extended to cases of imprisonment generally for contempts where a party has been committed after having been brought up on attachment. It will be time enough to consider that point when the case arises.

N. B. The defendant was then examined in open court; and witnesses were also produced in order to shake his testimony. A discharge was granted by the court. It was signed by the clerk. After the defendant had left the court-room and while he was going down the steps of the City-Hall, he was arrested on the part of the next friend of the complainant.

A motion was made for his discharge from this arrest— which was granted. The court ordered the bond, which had been entered into for the limits, to be given up and cancelled. His honor said, the defendant was still liable to be arrested upon the writ on which he had been taken and that the process must remain in the hands of the sheriff to be executed.